**Rex CAMP, Appellant,**

v.

**Gerald ELMORE and Fireman's Insurance Company of New York, Appellee.**

**No. 82–1618.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 30, 1982.

Decided Oct. 5, 1982.

Rehearing Denied and Opinion Amended Nov. 18, 1982.

Robert R. Cloar, Fort Smith, Ark., for appellant.

Jones, Gilbreath & Jones, Fort Smith, Ark., by Randolph C. Jackson, Fort Smith, Ark., for appellee.

Before ROSS and McMILLIAN, Circuit Judges, and DAVIES,* Senior District Judge.

McMILLIAN, Circuit Judge.

Appellant Rex Camp appeals from the district court's [1] entry of judgment notwithstanding the verdict for appellee Fireman's Insurance Co. of Newark (Fireman's). For the reasons discussed below, we reverse.

In September 1976, Camp and his wife bought approximately 50 acres of land near Mansfield, Arkansas, from Gerald Elmore. Several months later, the Camps moved from California into a rented house in Mansfield and made plans to build a home on the land purchased from Elmore. The rented house was not large enough to hold all the Camps' belongings, and Elmore offered to let Camp store whatever he wanted in a "pole barn" [2] on Elmore's property. Camp took Elmore up on his offer and stored a number of items there, free of charge, beginning in February 1977. In December, a fire destroyed the barn and many of Camp's belongings.

Elmore had an insurance policy from Fireman's which contained the following clause:

This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling and owned or used by an insured, while on the described premises and, at the option of the named insured, owned by others while on the portion of the premises occupied exclusively by the insured.

Before the fire, Elmore and Camp had not discussed insurance coverage of the barn and its contents. After the fire, Elmore and Camp had a conversation about insurance, but their recollections of that conversation differ markedly. Camp testified that Elmore said his insurance would take care of Camp's loss. Elmore testified that Camp asked if Elmore's insurance would cover Camp's property, and that he said he didn't know. Elmore also testified that until he saw Camp's list of destroyed property, which he felt was exaggerated, he wanted Camp's property covered; however, he stated that he never instructed the insurance company to cover Camp's property. The investigator for Fireman's Terry Norris, testified that Elmore told him about Camp's property, but that Elmore never said it should be covered under the policy. Norris did ask Elmore to get a list of Camp's destroyed property, which Camp provided.

* The Honorable Ronald N. Davies, United States Senior District Judge for the District of North Dakota, sitting by designation.

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

2. The barn had only one wall and a roof supported by a pole. It was used to store hay.

Camp sued Elmore for negligence and Fireman's as a third party beneficiary of Elmore's insurance policy. The suit against Elmore was settled. The suit against Fireman's went to trial, and a jury returned a verdict in favor of Camp for $6,000. The district court entered judgment for Fireman's notwithstanding the jury verdict on the grounds that there was no evidence that Elmore exercised his option to have his insurance policy cover Camp's goods. It is this ruling which Camp appeals.

 Fireman's does not argue that Elmore had to notify Fireman's of the presence of Camp's goods before the fire in order to have exercised his option. Rather, Fireman's contends that there is no evidence tending to show Elmore did exercise his option after the fire. The policy language does not specify how the option is to be exercised. We agree with Fireman's and with the district court that exercise required some kind of notice to the insurance company by Elmore; Elmore's statement to Camp of his intention was not enough. *See Corbin on Contracts* § 264 (1980).

Camp argues that Elmore's statement of intention, coupled with the insurance company's request of Camp for a list of the destroyed items, gives rise to an inference that Elmore had indeed notified the insurance company of his decision to exercise the option, only to later change his mind. This is the evidence on which the jury decided that Elmore had exercised the option.

 The propriety of granting judgment n.o.v. is tested under the same rule by the district court and the appeals court.

In reviewing the evidence on a motion for judgment n.o.v., a court must give the party securing the jury verdict the benefit of all reasonable inferences to be drawn from the evidence. The verdict, however, must be supported by substantial evidence; a mere scintilla is not enough. In making that determination, the record must be examined and the testimony reviewed without assigning credibility or weight to the witnesses and evidence. A

trial court cannot substitute its judgment of the facts for that of the jury, and should grant a judgment n.o.v. "only where the evidence points *all* one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party."

*Singer Co. v. E. I. du Pont de Nemours & Co.*, 579 F.2d 433, 440–41 (8th Cir. 1978) (citations omitted; emphasis in original). In the present case there was evidence Elmore did not exercise his option. However, there was substantial evidence supporting the jury's verdict that Elmore did exercise his option.

Accordingly, the judgment of the district court is vacated and the jury verdict is reinstated.